UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

RODNEY MUNNERLYN,

                      Petitioner,                  13-CV-06894 (JMF)(SN)

       -against-                                 **REPORT AND**
                                                                        **RECOMMENDATION**

**STEVEN E. RACETTE,**

                      Respondent.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE JESSE M. FURMAN:**

      Before the Court is *pro se* petitioner Rodney Munnerlyn's petition for a writ of *habeas corpus* under 28 U.S.C. § 2254 to set aside his conviction in state court on the grounds that: (1) the trial judge denied Munnerlyn's motion to admit expert witness testimony regarding the reliability of eyewitness testimony; (2) denial of effective assistance of trial counsel; and (3) denial of effective assistance of appellate counsel. Because Munnerlyn's claims are procedurally barred and thus precluded from federal *habeas* review, the Court recommends that this petition be DENIED.

                                                    **BACKGROUND**

**I.    Procedural History**

      After a jury trial that began on January 8, 2009, petitioner Rodney Munnerlyn ("Munnerlyn") was convicted of two counts of Robbery in the First Degree, N.Y. Penal Law ("Penal Law") § 160.15(2), (3), and two counts of Criminal Possession of a Weapon in the Second Degree, Penal Law § 265.03(1)(b), (3). On March 19, 2009, Munnerlyn was sentenced to

a prison term of 15 years and five years of post-release supervision on the robbery counts, and a prison term of nine years and five years of post-release supervision for the weapons counts, all to run concurrently. On February 14, 2012, Munnerlyn's conviction was affirmed unanimously by the Appellate Division of the New York Supreme Court, First Department ("Appellate Division"). The New York Court of Appeals denied leave to appeal on June 29, 2012.

Munnerlyn filed this petition for a writ of *habeas corpus* under 28 U.S.C. § 2254 on September 26, 2013, alleging that he is being held in state custody in violation of his federal constitutional rights. On October 24, 2013, the Honorable Jesse M. Furman referred this matter to my docket for a report and recommendation. The respondent filed his answer and opposed Munnerlyn's petition on December 20, 2013. The Court granted Munnerlyn until March 3, 2014, to file a reply. To account for the possibility that Munnerlyn did not receive the Court's previous scheduling order because of his subsequent transfer to a new prison, the Court mailed an order to Munnerlyn's new address extending the reply deadline to March 31, 2014. Munnerlyn did not reply.

Munnerlyn filed an application to stay his *habeas* petition on January 23, 2014, which the Court denied without prejudice on January 29, 2014. Munnerlyn did not renew his application.

## II.     Factual Background

Munnerlyn's *habeas* petition arises from his conviction for robbing Michael Gribbin ("Gribbin") with a loaded gun. Munnerlyn is serving his sentence in the Auburn Correctional Facility in Cayuga County, New York. The following facts are derived from the records of Munnerlyn's trial and post-conviction appeals and motions.[1]

---

[1] The respondent filed an incomplete trial transcript and represents that the remaining portion was unobtainable. (See Steward Decl. at 2 n.1.) The trial evidence is summarized in the respondent's brief, in the petitioner's state court appeal brief, and in the prosecution's opposition brief to the appeal. The Court

### A. Munnerlyn's Charged Criminal Conduct and Arrest

On August 17, 2007, in a construction site in lower Manhattan, Munnerlyn approached and attacked Michael Gribbin with the intent to steal the $4,000 in cash Gribbin had on his person to pay his employees. When a worker from the construction site intervened, Munnerlyn retreated and escaped. The police identified Munnerlyn as their suspect after they tracked the license plate number of Munnerlyn's escape. Munnerlyn was arrested when he reported for a probation interview.

The New York County Grand Jury indicted Munnerlyn on four counts. Two of those counts charged Munnerlyn with robbery in the first degree, in violation of, respectively, two subsections of Penal Law § 160.15 that provide as follows:

> A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
>
> 2. Is armed with a deadly weapon; or
>
> 3. Uses or threatens the immediate use of a dangerous instrument . . . .

Penal Law § 160.15(2), 160.15(3). New York penal law defines "deadly weapon" as "any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged . . . ." Penal Law § 10.00(12). Munnerlyn was also indicted on two counts of second degree weapons possession under Penal Law §§ 265.03(1)(b), (3).

---

finds that the respondent is in compliance with Rule 5(c) of the Rules Governing Section 2254 Cases in the United States District Courts.

### B. The Trial

#### 1. Pretrial Evidentiary Ruling

The trial court had permitted Munnerlyn's defense attorney to retain the services of an expert in eyewitness identification, but, shortly before the trial began, denied Munnerlyn's application to admit the expert testimony. The trial court explained its ruling on the grounds that, rather than being "a one-witness identification case," there were "two identifying witnesses" and "some corroboration [of] the identification" and of "the accuracy of that identification by those witnesses." (See People's Opp. App. Brief at 28.)

#### 2. The Prosecution's Case

Munnerlyn's jury trial began on January 8, 2009. The prosecution called Gribbin as its first witness. Gribbin testified that, in August 2007, he owned and operated a concrete contracting business, which was handling two projects at the time – one on Franklin Street in Brooklyn and the other on Orchard Street in Manhattan.

On August 17, 2007, Gribbin went to the Manhattan site carrying approximately $4,000 in cash to pay his workers. When he arrived, Gribbin entered the site and saw his employees working on the foundation of the construction approximately eight-to-ten feet below ground level. While observing their work, Gribbin heard the entrance gate open and looked over to see Munnerlyn walk into the project site. Gribbin testified that he saw Munnerlyn at a distance of approximately 10 or 12 feet away. From that distance, he noticed Munnerlyn "was a 'tall,' 'clean-cut' black man who was wearing 'dark'-colored pants and shirt, had short hair and no facial hair, and was 'well built' and 'seemed to be in good shape.'" (Pet. App. Brief at 6 (quoting T. at 12-13 (Gribbin Testimony)).) Gribbin testified that he had never seen Munnerlyn before

that time, and that he assumed Munnerlyn was there on a matter related to one of the other companies working at the site.

Gribbin proceeded toward a ladder that led down to the foundation level. As he stepped onto the ladder, Gribbin suddenly felt someone grab him from behind and throw him onto the adjacent scaffold. Munnerlyn then held a gun to Gribbin's stomach and demanded money. Gribbin acquiesced. As Gribbin reached into his left pocket to retrieve his wallet, Munnerlyn reached into Gribbin's right pocket and seized the cash envelope. Munnerlyn then struck Gribbin in the head with the gun.

Robert Goodwin testified that he was working at the site when he thought he heard someone call his name. He looked up and saw Munnerlyn hitting Gribbin, who was bleeding profusely, with an undiscernible object. Goodwin quickly climbed the ladder and intervened, causing Munnerlyn to fall from the scaffold onto the foundation floor, landing on his back. Goodwin looked down at Munnerlyn from an approximate distance of six feet. Goodwin then quickly descended the ladder toward Munnerlyn, who in turn tried to escape using a different set of steps. Once on the ground level, Munnerlyn ran toward the gates. Goodwin pursued, at one point even tackling Munnerlyn, but Munnerlyn freed himself and escaped through the gates. Goodwin called 9-1-1 and returned to attend to Gribbin. The workers meanwhile collected $3,400 in cash that had dispersed on the ground and returned it to Gribbin. Gribbin was transported by ambulance to the Bellevue Hospital where the lacerations on his head were sutured using a double-layer repair, a procedure used to treat deep wounds.

Mark Klein testified that, during the time of the incident, he was sitting nearby in his parked car. Looking through his left side mirror, he noticed a man sprinting in his direction. The man entered a black SUV parked across the street. Klein testified that the black SUV had caught

his attention earlier due to its large size and clean, shiny wheel rims, which he found to be an unusual sight in the neighborhood. Before the SUV drove away, Klein noted its license plate number and relayed that information – "305437 TW" – to an officer who was driving by. Klein informed the officer that he had slight dyslexia and may have reversed the letters of the plate.

Several hours later, New York Police Department ("NYPD") Detective Nicholas Isolano of the 7th precinct was assigned to investigate the matter. Using the license number provided by Klein, Detective Isolano conducted a computer search and found a result that matched the vehicle's description: Chevrolet Silverado, color black, license number 30457 TW. Through additional investigation, Detective Isolano learned that Fernando Santiago was the owner of the SUV and was wanted on two cases in the 75th precinct. Tracking Santiago to Schenectady, New York, Detective Isolano contacted the local authorities who took Santiago into custody. Detective Isolano then transported Santiago back to his precinct to question him about the August 17 incident. Santiago invoked his right to counsel and did not answer any questions.

At the time, NYPD Detective Michael Paccione was assigned to locate Santiago for the two 75th precinct cases. Detective Paccione visited the 7th precinct to collect Santiago, and during the visit, relayed Munnerlyn's name to Detective Isolano as someone who matched the description of the suspect. Detective Paccione testified that he had encountered Munnerlyn earlier during his effort to apprehend Santiago.

On August 29, 2007, Detective Isolano obtained a photograph of Munnerlyn from U.S. Probation Officer Lee Kwok and developed a six-photograph array, with Munnerlyn's photograph placed in the fifth position. Detective Isolano visited the construction site and presented the photo array separately to Goodwin and Gribbin. Gribbin positively identified the person in the fifth photograph, Munnerlyn, as his assailant. Goodwin indicated that the person in

6

the fifth position bore the strongest resemblance to the robber, but he declined to make a definitive identification because he was not completely certain.

Afterwards, Detective Isolano spoke with Officer Kwok, who then instructed Munnerlyn to report for a probation interview. Munnerlyn was arrested when he reported to Offier Kwok's office on September 10, 2013. After Munnerlyn's arrest, Detective Isolano brought Gribbin and Goodwin to the station for a line-up identification. Munnerlyn, at his request, was placed in the fifth position of the six-person line-up. Both Gribbin and Goodwin definitively identified Munnerlyn as the robber. Goodwin testified that he found it easier to identify the suspect in person than from the photograph array. At trial, Gribbin and Goodwin again identified Munnerlyn as the man who attacked and robbed Gribbin, and Detective Paccione identified Munnerlyn as the person whom he had encountered earlier during his investigation into the black SUV.

### 3. Munnerlyn's Case

Munnerlyn did not present evidence at trial. After the prosecution questioned its first witness, Gribbin, defense counsel renewed his application to call an expert witness on eyewitness identifications. The court denied the application.

### 4. Verdict and Sentencing

On January 21, 2009, the jury convicted Munnerlyn of two counts of robbery in the first-degree and two counts of criminal possession of a weapon in the second-degree. On March 19, 2009, Munnerlyn was sentenced to an aggregate prison term of 15 years and five years of post-release supervision on the robbery counts, and an aggregate prison term of nine years and five years of post-release supervision for the weapons counts, all to run concurrently.

### C.     Munnerlyn's Direct Appeal

Munnerlyn filed a counseled direct appeal of his conviction in the Appellate Division on May 5, 2010. The only question Munnerlyn presented on appeal was, "Did the Trial Court commit reversible error when it denied the defendant permission to have his expert on the reliability of eye-witness identification testimony testify at trial?" (App. Brief at 4.)

On February 14, 2012, the Appellate Division unanimously affirmed the judgment of conviction, finding:

> The [trial] court providently exercised its discretion in denying defendant's request to present expert testimony on eyewitness identification. The threshold inquiry in considering such an application is "deciding whether the case turns on the accuracy of eyewitness identifications and there is little or no corroborating evidence connecting the defendant to the crime" (*People v. Santiago,* 17 N.Y.3d 661, 669 (2011)). Here, there were two strong eyewitness identifications, as well as many items of circumstantial evidence that, when viewed as a whole, provided substantial corroboration.

People v. Munnerlyn, 92 A.D.3d 507, 507-08 (1st Dep't 2012). The New York Court of Appeals denied Munnerlyn's application for leave to appeal on June 29, 2012.

### D.     Munnerlyn's Federal *Habeas Corpus* Petition

Munnerlyn filed his *pro se* petition for a writ of *habeas corpus* under 28 U.S.C. § 2254 on September 26, 2013. Munnerlyn seeks relief in his petition on three grounds: (1) the trial court's exclusion of Munnerlyn's expert witness on eyewitness testimony; (2) ineffective assistance of trial counsel; and (3) ineffective assistance of appellate counsel. For his two ineffective assistance claims, Munnerlyn left blank the section of the petition requesting supporting facts. To explain his failure to exhaust his state remedies on these claims, Munnerlyn wrote, "Do not yet have all the documentary material needed to establish these claims." (Pet. at 7, 12.)

8

The respondent opposed Munnerlyn's petition and filed his answer on December 20, 2013. Munnerlyn did not reply. On January 20, 2014, Munnerlyn filed a letter requesting a stay and abeyance of his *habeas* petition to allow him to file a motion in state court under N.Y. Crim. Proc. Law ("CPL") § 440.10.[2] On January 29, 2014, the Court denied Munnerlyn's request without prejudice to re-filing and explained that, under Rhines v. Weber, 544 U.S. 269 (2005), the Court could stay a *habeas* petition only where the petitioner demonstrates that (1) good cause exists for failing to exhaust the claims previously, (2) the claims are potentially meritorious, and (3) the petitioner did not intentionally engage in dilatory litigation tactics. The Court further stated in the order, "Any new application must address the three Rhines factors to justify the extraordinary relief the petitioner seeks here. The petitioner is, however, reminded that this order does not prevent him from filing his C.P.L. § 440 motion in state court at any time." (Jan. 29, 2014 Order at 2.) Munnerlyn did not renew his request for a stay and abeyance.

## DISCUSSION

**I.    Timeliness**

It is uncontested that Munnerlyn's *habeas* petition is timely filed. The Antiterrorism and Effective Death Penalty Act (the "AEDPA") requires a state prisoner whose conviction has become final to seek federal *habeas corpus* relief within one year. 28 U.S.C. § 2244(d)(1)(A). This one-year period serves the "well-recognized interest in the finality of state court judgments." Duncan v. Walker, 533 U.S. 167, 179 (2001). A petitioner's judgment becomes final 90 days from the date the New York State Court of Appeals denies leave to appeal – i.e., after

---

[2] CPL § 440.10 permits convicted criminal defendants to file a motion to vacate the judgment of conviction with the trial court on various grounds involving facts not reflected in the record and not known to the court at the time of the judgment. See CPL § 440.10(1)(a-h); People v. Saunders, 753 N.Y.S.2d 620, 622 (3d Dep't 2003).

the "period to petition for a writ of *certiorari* to the United States Supreme Court." Pratt v. Greiner, 306 F.3d 1190, 1195 & n.1 (2002).

Because the New York Court of Appeals denied Munnerlyn leave to amend his direct appeal on June 29, 2012, and Munnerlyn did not seek a writ of *certiorari* to the U.S. Supreme Court, his conviction became final 90 days later on September 27, 2012. Munnerlyn had until September 27, 2013, to file his *habeas* petition. Accordingly, Munnerlyn's petition, filed on September 26, 2013, is timely.

## II.     Exhaustion

### A.     Statement of Law

Before a federal court can review a petition for a writ of *habeas corpus*, a petitioner must exhaust all state-provided remedies. 28 U.S.C. § 2254(b)(1)(A). See also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (stating that, to exhaust a claim, a petitioner must "invoke[] one complete round of the State's established appellate review process" before bringing the same claim in federal court). A claim is deemed exhausted if the petitioner: (1) "fairly presented" to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts; and (2) presented his claim to the highest state court that could hear it. Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan, 526 U.S. at 844-48.

To fairly present his claims, a petitioner may not rely solely on general principles of fairness, but instead must refer to specific constitutional provisions or concepts. See Reid v. Senkowski, 961 F.2d 374, 376 (2d Cir. 1992) (stating that minimal reference to the constitution satisfies the exhaustion requirement); see also de la Cruz v. Kelly, 648 F. Supp. 884, 888 (S.D.N.Y. 1986) (finding that the petitioner sufficiently alerted the state court of the constitutional aspect of his claims when he argued that the challenged ruling denied him a fair

trial and cited the Fourteenth Amendment). The legal doctrine asserted in the state courts does not need to be identical to that raised in the *habeas* petition, but "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Daye v. Att'y Gen. of New York, 696 F.2d 186, 192 (2d Cir. 1982).

The Court of Appeals applies the "fair presentation" standard liberally, allowing that a state court may be deemed to be on notice of the constitutional nature of a claim even if the petitioner did not specifically quote the U.S. Constitution. Other ways that a petitioner may be found to have provided notice sufficiently include "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Ramirez v. Att'y Gen. of New York, 280 F.3d 87, 94-95 (2d Cir. 2001) (citing Daye, 696 F.2d at 194). This position protects petitioners who rely on constitutional principles without citing "book and verse on the federal constitution," while ensuring that state courts have the opportunity to "pass upon and correct" alleged violations of federal rights. Picard v. Connor, 404 U.S. 270, 275, 278 (1971) (internal quotation marks and citations omitted).

### B.   Munnerlyn's Claims

Munnerlyn did not exhaust any of his claims. He did not exhaust his ineffective assistance of trial and appellate counsel claims because he never presented them to a state court. Munnerlyn stated in his request for a stay and abeyance that he planned to file a CPL § 440.10 motion in state court, presumably raising ineffective assistance claims. To properly exhaust ineffective assistance claims, a petitioner need not raise the claims on direct appeal, but must

present the claims to the highest court that can hear them through an appropriate collateral process, including a CPL § 440.10 motion. On direct appeal, the court considers only facts in the record, which typically does not include the grounds for an ineffective assistance claim. See People v. Love, 57 N.Y.2d 998 (1982).

Even though Munnerlyn still has the opportunity to exhaust those claims in the state courts, he cannot now amend his *habeas* petition to add these claims because they would be barred as untimely under AEDPA. As explained above, Munnerlyn had until September 27, 2013, to file this *habeas* petition. Amending a § 2254 *habeas* petition after the statute of limitations has run is governed by Federal Rule of Civil Procedure 15(c). See Littlejohn v. Artuz, 271 F.3d 360, 362-63 (2d Cir. 2001); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 814-16 (2d Cir. 2000). Under Rule 15(c), a late amendment "relates back" to the date of the original motion if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out-in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B). In Mayle v. Felix, the U.S. Supreme Court cited the heightened pleading standard for *habeas* petitions, which requires a petitioner to "state the facts supporting each ground" for relief, and held that untimely *habeas* claims "relate back" only when "the original and amended petitions state claims that are tied to a common core of operative facts." 545 U.S. 644, 655 (2005) (internal quotation marks omitted). The Court of Appeals has since held that an ineffective assistance of counsel claim will relate back only where the facts alleged to show ineffective assistance are sufficiently related for the new and original claims. See Gibson v. Artus, 407 F. App'x 517, 519 (2d Cir. 2010) (holding that a petitioner's new ineffective assistance claim based on counsel's failure at the grand jury stage to seek dismissal of the indictment because the petitioner was not given a preliminary hearing did not relate back to the

petitioner's original ineffective assistance claim based on counsel's failure at the grand jury stage to advise the petitioner that he had the right to testify); see also Jenkins v. Graham, 06 Civ. 10200 (CM)(JCF), 2009 WL 1119383, at *3 (S.D.N.Y. Apr. 23, 2009) (denying motion to amend a *habeas* petition because the new claim for ineffective assistance of appellate counsel did not relate to the facts alleged in the original claim for ineffective assistance of appellate counsel).

Munnerlyn did not allege any facts related to his ineffective assistance of counsel claims in his *habeas* petition, nor did he provide any facts, or even identify the claims, in his application for a stay and abeyance. Therefore, because there is no "common core of operative facts" to which a new claim could relate back, any attempt to amend the *habeas* petition to add ineffective assistance claims would be barred under AEDPA's statute of limitations. Munnerlyn's asserted claims for ineffective assistance of trial and appellate counsel should therefore be dismissed.

With respect to Munnerlyn's claim that the trial court wrongly denied his application to present expert testimony, Munnerlyn failed to fairly present his claim to a state court in constitutional terms. His appellate brief cites only New York cases and raises only the claim in terms of New York law governing the limits of judicial discretion; there is no language invoking concepts of constitutional due process or a fair trial. Specifically, Munnerlyn's brief focused on the extent to which the prosecution presented evidence to corroborate the eyewitness testimony as part of the analysis for abuse of judicial discretion established in People v. LeGrand, 8 N.Y.3d 449 (2007). Cf. Perez v. Graham, 13 Civ. 1428 (WHP)(GWG), 2014 WL 523409, at *8-9 (S.D.N.Y. Feb. 5, 2014), report and recommendation adopted, 2014 WL 805958 (Feb. 28, 2014) (finding a petitioner's claim based on the trial court's denial of his motion to admit expert testimony on eyewitness identifications unexhausted because it was only raised in terms of state law).

Munnerlyn's expert witness claim is thus unexhausted. Munnerlyn has already been denied leave to appeal by the New York Court of Appeals and, because this claim is record-based, it cannot be raised on collateral review. Munnerlyn's claim regarding the trial court's denial of his application to admit expert testimony is thus deemed technically exhausted but procedurally barred. See Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006). "In the case of procedural default (including where an unexhausted claim no longer can proceed in state court), we may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent.'" St. Helen v. Senkowski, 374 F.3d 181, 184 (2d Cir. 2004) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)).

Munnerlyn does not submit any grounds to show cause or any facts from which a ground might be inferred, nor does he acknowledge that his claim is in fact unexhausted. Munnerlyn declined the opportunity in this action to file a reply after the respondent raised the defense that Munnerlyn failed to exhaust this claim. Therefore, because Munnerlyn cannot satisfy his burden of showing cause, he cannot overcome his procedural default. The Court is thus precluded from considering the merits of Munnerlyn's claim. See Perez, 2014 WL 523409, at *10 ("Perez has provided no cause for not raising this claim in constitutional terms before all levels of the state courts. Nor has he provided evidence that he is actually innocent. Accordingly, any federal claim by Perez that the trial court erroneously excluded expert testimony on the reliability of eyewitness identifications is procedurally defaulted and must be denied for this reason alone.").

Therefore, because all of Munnerlyn's claims are procedurally barred and precluded from federal *habeas* review, the Court recommends that Munnerlyn's petition be dismissed.

## CONCLUSION

For these reasons, I recommend that Munnerlyn's petition for a writ of *habeas corpus* be DENIED as to all claims. Because Munnerlyn has not made a substantial showing of the denial of a constitutional right, I recommend that no certificate of appealability be issued. See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y.S. Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

I further recommend that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith and, therefore, that *in forma pauperis* status be denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

\* \* \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jesse M. Furman at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Furman. The failure to file these timely objections will result in a waiver of

those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   New York, New York
         July 16, 2014


cc:   Rodney Munnerlyn (*By Chambers*)
      09A-1561
      Auburn Correctional Facility
      P.O. Box 618
      Auburn, NY 13024